We'll hear argument now in the case of Conley against the United States. Ms. Yonning. Thank you, your honor, and may it please the court. The two issues presented in this case both concern the constitutional limits on law enforcement power. I will first address why Mr. Conley's conviction must be reversed because his arrest amounted to outrageous government conduct. And second, we'll address why his conviction must be reversed or, in the alternative, his motion remanded for the independent. Ms. Yonning, I have a preliminary question. I gather that Conley has been released on compassionate release by the district court. The statute deals with ongoing custody and there doesn't seem to be any. Is there any reason why one should proceed after a case law well establishes that if a petitioner is in custody at the time he brings his petition, that satisfies the statutory requirement? If there are collateral consequences. But, of course, the briefs don't mention anything about collateral consequences. Ms. Yonning, let me. I'm sorry, Judge Rovner. Let me tell you what my problem is. The briefs were filed before the district court's compassionate release order. Under the Supreme Court's jurisprudence, we now need to figure out whether there are collateral consequences. And the parties haven't addressed that. I mean, maybe you could address that now, but maybe you'd prefer to file a supplemental memo after argument, seeing if there are any. But it's a potentially important subject that's not covered in the briefs. And I'll yield now to Judge Rovner. Yes, I had the same question because I'm trying to figure out what relief he can get now. I mean, is it just supervised release? Is there something else here? Your Honor, Mr. Conley is under a term of supervised release. So that we would certainly argue that that is a collateral consequence. He's certainly experiencing difficulties reintegrating into society. And the relief that we're seeking here is the reversal of his conviction. So that's different from what has effectively occurred at this point, which is that he's essentially served the term of his sentence. But we would be happy to submit a supplemental for both sides to address in a post-argument filing the significance of the grant of his request for compassionate release. Certainly, Your Honor, we would be happy to do that. Please proceed. Thank you. First, whether Mr. Conley can obtain relief because of outrageous government conduct turns on the legal issue of whether that defense is available in this circuit. The district court made clear that as a factual matter, this case is the paradigmatic example of the rare instance in which the government's conduct is so outrageous that it bars prosecution. As an initial matter, although Mr. Conley did not raise this issue in his direct appeal, he has cause for any procedural default. His appellate counsel did not raise this issue, though it was preserved in the post-trial motion, which amounts to ineffective assistance of appellate counsel. It's true that the outrageous government... Now, now, wait, wait. I'm lost. Is there an argument in this case that Conley has received ineffective assistance of counsel? I didn't see such an argument. Your Honor, in the... Am I missing something? Your Honor, the government has contended that Mr. Conley procedurally defaulted his claim... Yes, I understand that. And I can understand a response that that's ineffective assistance of counsel. But is there any argument in your brief that there was ineffective assistance of counsel? I'm just looking at your brief again. I can't see any such argument. We raised, Your Honor, ineffective assistance of counsel as cause for excusing Mr. Conley's raising procedural default in their response... Arguments first raised in reply briefs, I hate to say this, are waived unless you want to say that you've furnished ineffective assistance of counsel. Your Honor, the government first raised the procedural default argument in its response brief. And on reply, we responded to that argument. And it's an argument that we raised in the district court as well as... Yes, and therefore had to raise in your opening brief on appeal, rather than postponing it to the reply brief, where, you know, this is fundamental appellate practice. Arguments first raised in a reply brief can't be responded to by the opposition. That's why we require arguments to be raised in the opening. If you raise an argument in the district court and omit it from your opening brief on appeal, it's pretty much straightforward that that argument has been forfeited. Your Honor, to be clear... So let's come back to this. The Supreme Court has said that even if there is adverse circuit precedent, an argument must be raised in the district court or it is forfeited. That's boozely against the United States. Is there any way around that other than your current ineffective assistance argument? Two points, Your Honor. First, to be clear, the district court found that Mr. Conley did have cause for his procedural default. So in our opening brief, we were not challenging that finding because we agree with it. And we presented ineffective assistance... And the cause was what? Adverse circuit precedent? The Supreme Court held... That's why I mentioned boozely. Boozely expressly holds that adverse circuit precedent is not cause. And I think faced with a conflict between a district judge and the Supreme Court, we're likely to follow the Supreme Court. Your Honor, the district court found that Mr. Conley had cause for any procedural default because his claim was novel and it did not reach the alternate ground that we probably... I must say I don't understand that at all. You say that this claim has been accepted in other circuits and was reserved by the Supreme Court in United States against Russell back in 1973. A claim reserved by the Supreme Court in 1973 can't possibly be novel in the 2010s. It's been raised all over the federal system for 50 years. Your Honor, our position with respect to novelty is that the facts of Mr. Conley's government conduct claim were not known at the time of his direct appeal. The key issue in the district court's statement that this was the paradigmatic example of outrageous government conduct was premised on that this was not a program that applied solely to Mr. Conley, but that it was a program that was constructed for the purpose of obtaining convictions indiscriminately. And that fact was unknown to Mr. Conley at the time that he was presenting this issue in the district court at his trial, excuse me, in his original criminal case and was simply just not available to appellate counsel on the record before appellate counsel at the time of the direct appeal. And so it's those facts that became available after the record on direct house defendants were filing motions to dismiss their indictments for selective enforcement. Was there anything Mr. Conley could have done to loop, let's say loop himself into what was happening in the district courts, even though his case was already on appeal? Could he have brought a motion to remand? Is there anything he could have done in your view? Your honor, in my view, there was not. I believe Mr. Conley's conviction was final by the time that other stash house defendants were still building their record. There was a multi-day evidentiary hearing that multiple other defendants presented. And my recollection is that that was all at the time that Mr. Conley's conviction was final. So the record wasn't even fully built at the time of this court's decision on direct appeal. Turning to the merits of the outrageous conduct issue, this court's prior cases do not foreclose the defense entirely. A number of other panels have declined to apply the defense and some have used broader terms than others, but our position is that this is not a categorical rule that, and many of those cases were decided under the terms of the specific facts available in those cases. The facts in this case show why this defense should exist. Most prominently, the district court noted that the purpose of this program was to obtain convictions. Counsel, if I understand the rules in circuits that accept a defense like this, somebody who was recruited into a crime by a private party can't assert this defense. That was a specific holding in the Fourth Circuit case. And of course, your client was recruited by a private party rather than the government. What do you think is the consequence? You know, the Fourth Circuit case I'm referring to is Heer. Your Honor, of the few cases that have applied this defense, the Third Circuit's case in Twigg actually found that the lack of interaction between the government and the defendant in that case was a factor that made the conduct outrageous. It was the sort of the lack of government oversight in administering its essentially trap that it had set for whoever had happened to be brought in. And that's a similar fact to what we have here. So we disagree with the Fourth Circuit's position in Heer. So you want us to jettison a whole bunch of Seventh Circuit cases and to disagree with perhaps the leading circuit that has accepted this defense as well? Well, Your Honor, I would disagree that the Fourth Circuit is the leading case that has accepted. Well, it's hard to see what circuit is more favorable to you than the Fourth. The Third Circuit's case in Twigg is the one of the few cases that has applied the defense. And it's so we would urge this court to look to that case because of the similarity of the facts here. And if the court will permit, I'd like to reserve the remainder of my time for rebuttal. Certainly, counsel. Ms. Kastanek. Thank you. And may it please the court, good morning. Starting with the question of whether the defendant's 2255 claim is moot as raised by the court, the government's position and reading of this court's case law is that it is not moot, including because after I've already said that we would like the parties to file memos within 14 days addressing this. We need to figure out exactly what restraints, either direct restraints or collateral consequences Conley is under after the grant of compassionate release. And then we can figure out how cases like the Supreme Court's Cibran decision apply. Yes, of course, Your Honor. Are there any situations in which someone who has not been directly recruited by the government could make a successful and practical claim? I mean, suppose the government had said to Myriam, when you recruit others, tell them that the gang leader is ready to kill anyone who this threat to Adams, who repeats it to Conley. Could that be government entrapment? This court on direct appeal addressed that issue and held that it was not inclined to adopt a derivative entrapment defense. It noted that the case law on that issue and the soundness of what it called derivative entrapment, which I think is the scenario you're referencing, is not well founded. And in any event, there were too many layers of separation between this defendant and the government actor. I also would note that the entrapment issue is not really presented directly by the defendant's arguments. The question is whether there is outrageousness, which requires something above and beyond entrapment, requires something above and beyond a government sting operation, and that this court historically, and for good reason, has been unwilling to recognize given its subjective, free-floating nature untethered to any legal principles. So this court has never found that entrapment derivative or otherwise is outrageous. It's found everything from entrapment to torture to not constitute outrageous government conduct. And this court should do the same here. There's no inherent fairness in these acts, much less outrageousness that warrants dismissing an indictment, which is a petty remedy for this court. Is the ATS still conducting fake Stash House stings? In this district, the last Stash House case that I'm aware of having been charged was in 2013. So that's why the category of cases addressed by the district courts overseeing this evidentiary hearing were from 2006 to 2013. So it no longer is an active tactic that's used or has been charged in this district, I should say. But I also would say that there's nothing unlawful about it. The defense has not raised any actual cognizable legal problem with this type of sting operation. It's not outrageous. There wasn't any inherent fairness. The defendant was tried by a jury, found guilty of real crimes. And there is a strong public interest in upholding those convictions and ensuring that a defendant serves an appropriate sentence. The courts would not do that. The government in our district hasn't brought a case in eight years, right? I'm sorry, I just didn't hear you. Can you repeat that? Sure. What I'm saying is, and yet, in our district, the government has eschewed bringing these cases for eight years. Judge Rovner, you mean the Northern District of Illinois? Do we know anything about the other district courts in the circuit? Your Honors, I am not prepared to give a kind of a survey of what these stash house operations look like in other districts. I can say that the last case that was brought here in the Northern District of Illinois was in 2013. However, the government takes serious issue with the idea that there's anything unlawful about these or other sting operations. This court repeatedly has found that, although you're right, they question the wisdom in Conley's direct appeal of this law enforcement tactic, that's a far cry from saying that there's something inherently unlawful about the operation itself. So for that reason, in addition to the procedural default, the outrageous government conduct claim on appeal is without any basis. I'm sorry, were you going to be addressing another judge's question? No, go ahead, Your Honor. I'd like to ask you about the race claim and the burden of proof that's been debated at considerable length here. Let's think about, for example, litigation under Section 1983 against a state or local government. Suppose in civil litigation, a plaintiff proves by a preponderance of the evidence that a police force deliberately targeted black drivers for tighter traffic enforcement, for example. Would that be sufficient, do you think, to justify injunctive relief against that local government? I believe that this court's opinion in Chavez v. Illinois State Police presents a similar fact pattern, and preponderance is the standard that's used in a civil 1983 case. But that, of course... Well, so why should it be different in related criminal cases? Because the remedy is so substantially different. So the civil claims are governed by a preponderance standard. What we're talking about here is the dismissal of an indictment, which, as I said a little bit earlier, is a heady task for this court. It requires that the court... And in this case, not just the dismissal of indictment, but the reversal of a conviction. A grand jury has found probable cause for that indictment. A jury has found the conviction, the defendant to be guilty. And there is a strong public interest in ensuring that it recognizes that those indictments are a different actual scenario than a civil claim. What worries me is sort of the kind of a reverse heck against Humphrey problem, the embarrassment of a judicial system that would say, by a preponderance of the evidence, you were targeted for this enforcement action by your race, but because you haven't proven that by... And we'll give you relief, civil relief, but because you haven't proved it by clear and convincing evidence, your conviction stands. That seems like a pretty unseemly prospect that is posed by this higher standard of proof in the criminal cases. Understood. But that is a problem that's inherent in Armstrong as well. And while I recognize Armstrong has decided in a selective prosecution context, and there is a presumption of regularity in that context that doesn't apply to federal agents, the same general principles that the court talks about in Armstrong are applicable here. So there is a... I understand, counsel, that that was exactly the government's argument in Davis. And it was rejected en banc unanimously by this circuit in Davis. Why should we be going back and thinking that Armstrong provides the controlling approach? We would have... Overruling a recent en banc decision is not something within our panel. I do not think it requires overruling an en banc decision. The question in Davis was to whether to open ATF and the agents up to discovery, which is a much different question than whether an indictment should be dismissed. The court in Davis did not purport to address that standard for dismissing of an indictment in the context of... But the court in Davis was quite clear that Armstrong was not providing the correct analogy to challenges to behavior of investigators and that civil litigation against investigators did provide the correct approach. You're essentially asking us to go back on that. Now, maybe it was a mistake, but going back on a recent en banc is pretty hard to persuade a panel to do. I respectfully don't read Davis that broadly. And I say that respectfully because you know better, but I think that Davis very clearly... No, I don't know better. The author of an opinion has no privilege in understanding what it means. That's an objective matter. The opinion speaks for the court, not just for the author. Yes, Your Honor. And I read Davis to address the issue of discovery. It notes that discovery against an agent and agency is routine. We often have agents testify. They fill out affidavits. So opening them up to discovery and inquiry into the law enforcement tactics and the decisions made is a much more routine matter. And therefore, Armstrong's standards, including that presumption of regularity that attaches to prosecutorial decisions, doesn't apply equally in the selective enforcement context. The government respectfully believes that that same distinction just is not present when we're talking about dismissing an indictment. So Armstrong focuses on the executive prerogative to decide enforcement priorities, to perform that core function of making decisions as to who to arrest and to prosecute. And it also spends a good deal of attention in the opinion, focusing on the chilling of law enforcement that a selective, in that case, prosecution claim would have, the Monday morning quarterbacking involved. But of course, that's equally applicable to a selective enforcement claim. And so even removing the presumption from that context, all of those reasons from stand, and they stand strong, to require a heightened standard in this context as well. Ms. Kastanek, if we were to disagree on the standard of proof on the race case, and we thought that a preponderance on the race claim, and we thought a preponderance of the evidence ought to be enough, would we need to remand to the district court for further factual findings? Or do you think we should try to decide that on our own? Your Honor, I don't think a remand is necessary. There's no reasonable probability that applying a preponderance standard here would change the outcome. Judge Coleman adopted in full Judge Castillo's analysis of the statistical report put forward by Professor Fagan. And the problems with that report are fundamental. They're fatal. So Judge Castillo found, and then Judge Coleman, in adopting that opinion, found that the errors are, you know, in attributing to the defendant or to ATF, the choice of particular defendants, the decision to include the FBI cases, the decision to... And this was an FBI case, correct? It was, Your Honor. And it's important to note that, you know, there are various fault lines in Professor Fagan's analysis, each one of which kind of stand alone. So Professor Schatzenbach, who was the government's expert, took out the FBI cases, the targets selected by FBI. Fourteen Black men who were selected by FBI re-ran Fagan's analysis, keeping everything else the same, the controls, the data set, and found that there no longer was a race effect. So even that small change affects the conclusions that Fagan reached. And that's a fundamental fatal error, regardless of whether you apply a clear evidence or a preponderance standard. The same is true when you look at the flaws with respect to the initial targets who then recruited defendants, or you look at conspiracy size. So the Black conspiracies were far larger than the white conspiracies by a substantial magnitude. Black conspiracies were generally 3.9 people large, white conspiracies, 2.3 people large. And Professor Schatzenbach, all he did was re-weight those conspiracies, and again, found that once he did that, no statistical evidence of discrimination. So again, standard of proof does not, you know, affect those determinations. There are similar fatal errors in how Professor Fagan looked at the similarly situated group for comparison. You know, he took a group that was 300,000 people large across 10 counties, including counties like LaSalle County that are predominantly white. Sir, forgive me. Of course, Your Honor. Mr. Connolly asserts that the overwhelming majority of people who rob actual real stash houses are white. You haven't had an opportunity to respond to that. I do. The government would take issue with that. The comparison that Professor Schatzenbach made based on the actual data set in front of the court for the evidentiary hearing is to arrestees for actual armed home invasions, which are pretty analogous to this setting. And while it wasn't non, it wasn't conclusive proof of non-discrimination, it certainly indicated that the percentages matched up well. About 75 percent of them were black. Here, about 78 percent of those 94 defendants were black. So that's persuasive evidence that the defense is incorrect. For all those reasons, if there are no further questions, the government asks that the court affirm the district court's judgment. Certainly, counsel. Anything further, Ms. Yannick? Yes, Your Honor. I'd first like to address this issue of the proper course on the selective enforcement claim if the legal standard is incorrect. And that is to remand the case to the district court for a couple of reasons. The first is the district court's opinion in this case was very clear that it was based on its understanding of the legal standard and adopting the legal standard in Brown. That was the reason that the court, the district court, granted a certificate of appealability on this issue because it suggested that the evidence could come out a different way were the different legal standard applied. Additionally, the Brown case also turns on the legal standard where it commented on the troubling implications of the statistical evidence presented. And the court simply noted that it fell short of what it called the exacting standard of Armstrong that Brown applied in that case. So for both of those reasons, if the legal standard is incorrect, then the district court should have the opportunity to address that further. Moreover, Mr. Conley has consistently requested discovery into the selective enforcement claim, which he has never received. Now, other defendants, including some of his co-defendants, were able to get the underlying material that then formed the basis of the Fagan report. But Mr. Conley has never seen that. He's never seen the ATF selection manual, for example, or I believe there are multiple versions of it. That was all subject to a protective order. It's all filed under seal on the district court in different cases. Mr. Conley's only received the benefit of the public filings in those other cases. And he's consistently asked for that underlying material and should be given the benefit of it for his claim. Second, Your Honor, I'd like to address the issue of distinguishing this case from other cases that have described as being lawful. The district court in this case noted that this particular fake stash house program was constructed not for what it called legitimate law enforcement objectives, but for the purpose of obtaining convictions. And that's sort of exemplified by the fact that the government in this case didn't look to who it was actually targeting. It never met with Mr. Conley. It never attempted to ascertain, you know, what would Mr. Conley have been an appropriate target? Was he the kind of person that would otherwise have gone on to rob a stash house? The evidence in this case very clearly suggests that he would not. This court noted on direct appeal that Mr. Conley experienced not one, but two strokes of bad luck that led to becoming part of this scheme. And Mr. Conley is not the only fake stash house defendant about whom district courts have made that observation. We cited some of those cases in our brief. So for those reasons, Your Honor, we would urge this court to reverse Mr. Conley's conviction or on the alternative to remand his 2255 motion to the district court. Thank you. Thank you, counsel. The case is taken under advisement and the court will take a 10-minute recess before calling the third case for argument.